CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

DAVID J. WARD (CABN 239504)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6934
    Fax: (415) 436-7234
    david.ward@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 25-CR-130-RFL |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| MIN "JAMES" PAIK, | |
| Defendant. | |

## I.   INTRODUCTION

Defendant Min "James" Paik comes before the Court for sentencing after pleading guilty to one count of Bribery Concerning Programs Receiving Federal Funds (Count One), and one count of Tax Evasion (Count Two). As to Count One, Defendant Paik admitted that he made a total of $19,000 in cash payments to an employee of the Port of San Francisco, a brazen and corrupt attempt to persuade the Port employee to award Paik leases to operate restaurants in spaces on the San Francisco waterfront owned by the city and operated by the Port. As to Count Two, Paik admitted to concealing over $200,000 of his assets from the IRS By transferring them into a bank account in his daughter's name,

and then submitting false statements and bank documents to the IRS, all to evade paying over $33,000 in federal income taxes.

This is egregious criminal conduct. In these circumstances, a significant sentence is appropriate and warranted, which is reflected in Paik's U.S. Sentencing Guidelines calculations, which recommend a sentence of 18 to 24 months. However, Paik has accepted responsibility for his conduct and has already paid full restitution for his tax fraud. Given this, the government recommends that the Court vary downward and impose a sentence of 15 months in custody and two years of supervised release.

## II.     BACKGROUND

### a.     The Port of San Francisco Bribery Scheme

Defendant Paik owned and operated multiple restaurants in the San Francisco Bay Area. In May 2023, he sought to obtain leases to operate restaurants in space along the waterfront in Fisherman's Wharf, property owned by the City of San Franciso and managed by the Port of San Francisco. *See Dkt. 47* (Plea Agreement). Rather than adhere to the legal requirements established by the Port to obtain the leases – the submission of detailed bid proposals and participation in a competitive bidding process – Paik sought to subvert the process by paying bribes.

On May 13, 2023, Paik contacted a realtor and offered to pay her for her assistance in securing a lease at the Port for one of the restaurants he owned, writing: "*if you butterfly restaurant pier 33 successful lease for me I will give to $5000 cash for you. Do not say anybody [sic]*." *See Dkt. 52* (Presentence Investigation Report), ¶ 14. The realtor responded, writing: "*James, that is illegal and I will not take part in that. Please understand that the Port will determine who will take on the butterfly space. I will get you a proposal this week.*" *Id.*

Despite being told explicitly that his conduct was illegal, Paik was undeterred, and sought to instead bribe the Port directly. *Id.* On September 13, 2023, Paik met with an employee of the Port to discuss obtaining the restaurant leases. *Id.* Following that meeting, Paik handed the Port employee an envelope containing $3,000 in cash – a payment Paik has admitted was a bribe intended to influence the Port employee to award him the restaurant leases. *Id.* The Port employee reported the payment to his superiors, who contacted law enforcement, and the Port cooperated with the FBI in its investigation into

Paik's bribery scheme. *PSR* ¶ 11.

During three subsequent meetings with the Port employee, including two where the Port employee was accompanied by an undercover FBI agent, Paik paid an additional $16,000 in bribes, all the while attempting to persuade the Port to bypass the required bidding process and award him the restaurant leases in return for envelopes of cash and the promise of additional payments. *Dkt. 47*.

    b. <u>The Tax Evasion Scheme</u>

Separate from his bribery crimes, Paik engaged in a criminal scheme to avoid paying taxes, including by concealing over $200,000 in assets from the IRS by transferring them to a bank account in his daughter's names and then misrepresenting the true scope of his financial assets in IRS filings.

Paik admitted that beginning in June 2022 he communicated with an individual he had retained to provide him tax advice. *PSR* ¶ 27. Paik admits that he sent a text to his tax advisor stating "*we don't want to pay taxes*" and in response, was instructed to *"put money in money orders or get family member to place 90% of you money in their account." Id.* Paik was further told that he should move his funds into an account that was not using his federal tax ID or Social Security number. *Id.*

Paik admitted that he then transferred approximately $217,800 from his Bank of America bank account into a bank account controlled by his daughter, and then signed, under penalty of perjury, an IRS Form 433 F in which he falsely asserted that his assets from that account were only $2,000. *PSR* ¶ 28. Paik admits that he misstated the amount in his account because he knew that the true balance in the account would be material to the IRS. *Id.* Paik further admits that at the time he submitted the Form 433 F with the misstatements, Paik owed $33,733.12 in taxes, and that he submitted false documentation and statements to the IRS to evade paying those taxes. *PSR* ¶ 29.

**III. GUIDELINES CALCULATION ANALYSIS**

The government agrees with U.S. Probation's calculation of the U.S. Sentencing Guidelines, which are as follows:

<u>Count Group One: Bribery Concerning Federal Funds (Count One); Tax Evasion (Count Two)</u>

 a. Base Offense Level, U.S.S.G. § 2C1.1:          12

 b. Specific offense characteristics under U.S.S.G. Ch. 2

   i. Multiple Bribes, U.S.S.G. § 2C1.1(b)(2)    +2

|  |  |  |
|---|---|---|
| ii. | Value of the bribes greater than $15,000 U.S.S.G. § 2B1.1(b)(1)(C) | +4 |
| c. | Adjusted Offense Level | 18 |
| d. | Acceptance of Responsibility: | - 3 |
| e. | **Total Adjusted Offense Level** | **15** |

## IV.  SENTENCING RECOMMENDATION

### A.  Legal Standard

The U.S. Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process, and are to be a guide and reference point for the Court throughout the sentencing process. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court is to impose a sentence "sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991. In accomplishing that goal, the Court should consider the following factors set out in 18 U.S.C. § 3553(a):

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### B.  The Government's Recommended Sentence Vindicates the 18 U.S.C. §3553(a) Sentencing Factors

*1.  The Facts and Circumstances and the Need For the Sentence to Reflect the Seriousness of the Offense and to Provide Just Punishment for the Offense*

Defendant Paik engaged in base criminal corruption, blatantly attempting to bribe a public official in return for a financial benefit. Paik's actions – paying cash, meeting with the Port employee outside of normal channels, disregarding an explicit warning that his conduct was illegal – all demonstrate that Paik clearly understood the illicit nature of his actions. Yet he persisted in his bribery

attempts as a way to circumvent the established legitimate bidding process for leases for space along the Port of San Francisco. Paik in essence cheated in order to gain an unfair advantage over other bidders, and to deprive the City of San Francisco of the monies it would get through a public bidding process.

Few cases implicate the second sentencing factor above – "the need … to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" – in the way that public corruption offenses do. Bribery cuts at the heart of open and fair governance and undermines the rule of law. By its nature, it places the greed and avarice of the few above the duty owed to the public by its elected officials and those who seek to draw from the public purse.

When corrupt individuals such as Mr. Paik attempt to bribe public officials, it is done to line their pockets at the expense of the taxpayers and the citizens who expect that the awarding of public dollars will be done fairly and in the best public interest, and that those who seek taxpayer dollars will do so honestly. Bribery erodes this trust. *See United States v. Brennan* 629 F. Supp. 283, 300 (E.D.N.Y. 1986) ("Bribery is a betrayal of trust. The expectation that one will do what one is relied on to do, is a precious necessity of every social enterprise . . . no crime is more corrosive of our institutions."); *see also United States v. Spano*, 411 F.Supp.2d 923, 940 (N.D. Ill. 2006), *affirmed*, 477 F.3d 517 (7th Cir. 2006). ("Public corruption demoralizes and unfairly stigmatizes the dedicated work of honest public servants. It undermines the essential confidence in our democracy and must be deterred if our country and district is ever to achieve the point where the rule of law applies to all—not only to the average citizen, but to all elected and appointed officials."). As the Supreme Court recognized, bribery is the "perversion or destruction of integrity in the discharge of public duties." *Nixon v. Shrink Missouri Government*, 120 S. Ct. 897, 923 (J. Thomas, dissent), quoting 3 Oxford English Dictionary 974 (1989).

The federal bribery statutes, including 18 U.S.C. § 666, were enacted specifically to combat this corruption. As the Second Circuit held in *United States v. Rooney*, 18 U.S.C. § 666 was enacted by Congress specifically "to augment the ability of the United States to vindicate significant acts of theft, fraud, and bribery involving Federal monies that are disbursed to private organizations or State and local governments pursuant to a Federal program." 37 F.3d 847, 851 (2nd Cir. 1994)

The nature and circumstances of Paik's crimes warrant a significant custodial sentence as a means, in part, to reflect "the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a). In this case, a sentence of 15 months, followed by two years of supervised release, is sufficient but not greater than necessary to achieve these ends.

### 2. The History and Characteristics of the Defendant

Defendant Paik was born and raised in South Korea. His father passed away when he was three years old, and Paik and his family grew up in extreme poverty. PSR ¶ 56, 57. Nonetheless, Paik was able to graduate from high school in South Korea, and then serve in the Korean Army from 1981 to 1984. PSR ¶ 69. Paik met his wife in South Korea, and the two emigrated to the United States, where Paik started and ran multiple restaurants in locations throughout the United States. PSR ¶ 58. Paik has had success in his restaurant business; however, he is in the process of closing his final restaurant, Nick's Lighthouse, after being evicted by the Port of San Francisco. PSR ¶ 70.

Defendant Paik overcame adversity and poverty to build a successful business and a rich life in the United States. Given this, Paik knew full well he was expected to operate his businesses legitimately, and he knew that he was required to pay taxes. Paik nonetheless sought to use fraud and corruption to evade these obligations. And while the Court should certainly take into account at sentencing the hardships Mr. Paik has faced, as well as the collateral consequences of his actions, the Court must weigh that against the fact that the was a successful restauranter and businessman and yet, 1) made a conscious decision to turn to corruption to further his business and financial interests; and 2) took explicit steps to conceal his income and assets, and then submitted false and fraudulent documentation to the IRS to avoid paying over $33,000 in federal taxes that he owed.

### 3. The Government's Recommendation Avoids Unwarranted Sentencing Disparities

A sentence for defendant Paik of 15 months custody and two years of supervised release will avoid unwarranted sentencing disparities among similarly-situated defendants charged, particularly as to the many cases sentenced as part of the government's long-running investigation into local corruption in San Francisco. *See* 18 U.S.C. § 3553(a).

1  To be sure, each case and each defendant must be judged independently, and the government acknowledges that the drawing of comparisons in an attempt to avoid unwarranted sentencing disparities is challenging and imperfect. Nonetheless, the government respectfully believes that the Court can and should look to several of the recent public corruption cases that have come before Courts in this district in determining what sentence is appropriate here.

Broadly, defendant Paik is similarly situated to the defendants who were business owners and executives who paid bribes in order to win city contracts or other business for themselves or their companies.

Florence Kong, a wealthy business owner, pled guilty to bribing Mohammed Nuru, the then head of the San Francisco Department of Public Works, with a $36,000 Rolex, meals and drinks, all to secure contracts from Nuru and DPW for her companies, and then making false statements to the FBI when confronted. *United States v. Florence Kong,* 21-CR-0354 WHO, Dkt. 40. Kong was sentenced by the Court to 12 months and one day of imprisonment, three years of supervised release, and fined $95,000. *Id.* Kong did not cooperate, and her recommended USSG range was 24 to 30 months (without the benefit of the Zero-Point Offender reduction).

Ken Hong Wong also pled guilty bribing Nuru, paying the former DPW Director $20,000 in cash, given to him by an individual in China, to secure a job for another individual here in the United States. *United States v. Ken Hong Wong*, 23-CR-00162 WHO. Wong was then personally paid $10,000 for his role in the scheme. *Id.* When confronted by the FBI, Wong admitted his involvement, accepted responsibility, and provided cooperation to the government in its investigation into Nuru and into an unrelated investigation. The government recommended a sentence of six months custody, which the court accepted. *Id.* Like defendant Paik, Wong's USSG sentencing range was 18 to 24 months.

Construction executive Alan Varela was sentenced to 24 months imprisonment, below the recommended U.S.S.G. range of 37 to 46 months (without the benefit of the Zero-Point Offender reduction), and fined $127,000, for conspiring with co-defendants Balmore Hernandez and William Gilmartin to provide over $100,000 in bribes to Nuru, including a box containing $25,000 in cash and a

$40,000 John Deere tractor for Nuru's ranch. *United States v. Alan Varela*, 21-CR-0192 WHO, Dkt 52. Varela did not cooperate with the government.

Balmore Hernandez, Varela's co-conspirator, pled guilty to identical charges, but Hernandez did cooperate substantially with the government. *United States v. Balmore Hernandez,* 20-CR0353 WHO. He was sentenced this month to six months imprisonment. *Id.*

While the facts and circumstances of defendant Paik's case are unique, the cases above can provide guideposts to the Court as it determines the appropriate sentence in this case.

Finally, defendant Paik's sentence must also reflect the fact that he has pled guilty to a separate crime, tax evasion. Given these considerations, and weighing the Court's other sentences in similar cases, the government believes that a sentence for defendant Paik of 15 months in custody avoids unwarranted sentencing disparities with the other similarly-situated defendants sentenced as part of the government's San Francisco corruption prosecutions.

## VI. CONCLUSION

For the foregoing reasons, the government respectfully asks the Court to sentence defendant Paik to a term of imprisonment of 15 months, followed by a two-year term of supervised release, and to order restitution in the amount of $33,317.

                                                          CRAIG H. MISSAKIAN
                                                          United States Attorney

Dated: November 13, 2025                  */s/ David J. Ward*
                                                          DAVID J. WARD
                                                          Assistant United States Attorney