CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

DAVID J. WARD (CABN 239504)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7230
    david.ward@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>MIN "JAMES" PAIK,<br><br>    Defendant. | CASE NO. 3:25-00130 RFL<br><br>**UNITED STATES' MOTION TO REVOKE DEFENDANT'S BOND AND TO ORDER HIM DETAINED** |

### NOTICE OF MOTION

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL:

PLEASE TAKE NOTICE that, on Thursday, January 8, 2026, at 2:00 p.m., or at the Court's earliest convenience, the United States will and hereby does move this Court, pursuant to 18 U.S.C. §§ 3143(a)(2) and 3148(b), to revoke defendant's bond and order him detained.

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

On July 31, 2025, defendant Min "James" Paik pled guilty to one count of Bribery and one count of Tax Evasion. Paik admitted to paying $19,000 in bribes to a Port of San Francisco employee in order to secure a lease for his restaurant, Nick's Lighthouse. Separately, he admitted to

evading $33,733 in federal taxes. On November 20, 2025, the Court sentenced Paik to nine months in custody, three years of supervised release, and ordered restitution of $33,733.

In his representations to U.S. Probation, the Court, and the government, in advance of sentencing, Mr. Paik repeatedly argued for leniency. Central to that plea was his claim that as a result of his prosecution, he was forced to close his only restaurant and had lost all of his income. This assertion was made repeatedly – in the draft PSR, in counsel's written response to the draft PSR, in the final PSR, in counsel's sentencing recommendation, and by Mr. Paik himself at sentencing. As he stated to the Court then: "*Now that the restaurant has been closed, I just want to be able to get a job, perhaps with another restaurant, to be able to pay rent and to pay debts*."

None of that was true. In fact, as the government has since learned, at the time of sentencing, defendant Paik owned and had been operating a second restaurant for over a year. Bank statements from that restaurant show that this undisclosed restaurant began taking in revenue on October 2024. In November 2025, during the month he was sentenced and claiming his restaurant had been closed, there was $75,442 in deposits, and $56,304 in withdrawals. Three weeks earlier, Mr. Paik had signed a listing agreement to sell the restaurant. He was asking $300,000.

In addition to violating the terms of his pretrial release, and the terms of the plea agreement he entered into, there is probable cause to believe that Paik's misstatements and deceptions were in violation of 18 U.S.C. § 1503 (Obstruction of Justice). A defendant who violates his terms of pretrial release, including by committing a new crime, "is subject to revocation of that release, an order of detention, and prosecution for contempt of court." *18 U.S.C. § 3148(a)*. Under 18 U.S.C. § 1348(b), "[i]f there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." After a finding of guilt or after sentencing, there is a presumption of detention, and the burden is on the defendant to show, by clear and convincing evidence, that he is not likely to flee or pose a danger to the community. *18 U.S.C. 3143(a)*.

Defendant Paik cannot meet this burden, and the government respectfully asks the Court that his pretrial release be revoked and that he be ordered detained immediately.

## II.    BACKGROUND

### A.    Charged Conduct and Procedural Background

Defendant Paik was charged by Complaint on November 14, 2023 with one Count of Bribery Concerning Federal Funds, in violation of 18 U.S.C. § 666(a)(2). *Dkt. 1*. The Complaint alleged that Mr. Paik and his wife paid $19,000 in cash bribes to an employee of the Port of San Francisco in order to influence the Port to improperly award a lease on Port property to one of Mr. Paik's restaurants, Nick's Lighthouse. *Dkt. 1*. On May 16, 2025, Paik and his wife, Hye Paik, were each charged by Information with one count of violating 18 U.S.C. § 666(a)(2), and Mr. Paik was also charged with one count of tax evasion. *Dkt. 39*. On July 31,2025, Mr. Paik pled guilty to both counts. *Dkt. 47*. In his Plea Agreement, Paik admitted to corruptly paying the $19,000 in bribes and to evading $33,733 in federal taxes, by secretly transferring over $200,000 into his daughter's bank account to conceal from the IRS his true net worth, and filing false documents with the IRS. *Id.*

On Nov. 20, 2025, the Court sentenced Mr. Paik to nine months in custody followed by two years of supervised release. *Dkt. 59*. No fine was imposed. In the Presentence Report, U.S. Probation recommended that the fine be waived "due to his inability to pay." *Dkt. 52*. At Mr. Paik's request, the Court set his surrender date for March 2, 2026. *Dkt. 60.*

### B.    Nick's Lighthouse and Paik's Representations to the Court and U.S. Probation

Throughout the sentencing process, Mr. Paik repeatedly and explicitly represented to the Court, U.S. Probation, and the government that, as a result of his conviction, his Nick's Lighthouse restaurant was losing its lease and would be forced to close. Mr. Paik falsely stated that this was his only source of income, and that once the restaurant closed, he would have no income and no assets.

Mr. Paik's deception began with his representations to Probation as it worked to prepare the draft PSR. The draft PSR stated that the defendant was interviewed during the presentencing investigation, and personal information was verified by his wife, co-defendant Hye Paik, and his daughter G.P. *See Declaration of David Ward in Support of Motion to Revoke Bond,* **Exhibit A.** The draft PSR stated that "Mr. Paik is the owner and operator of Nick's Lighthouse, a restaurant in San Francisco (verified). However, he advised he recently received an eviction notice and is in the process of closing the business. He reported his current business income is $9,000 per month." *Id.*

On October 30, 2025, counsel for Mr. Paik submitted a written response to U.S. Probation regarding the draft PSR. *Ward Decl.*, **Exhibit B**. The letter requested that U.S. Probation include in the final PSR the fact that Mr. Paik was being evicted from his restaurant and that it would be closed by the time of sentencing. *Id.* According to the letter, the Port had directed Mr. Paik to vacate the premises where it was operating by Nov. 7, 2025. *Id.* Because of this closure, counsel asserted that "as of the date of the final PSR, Mr. Paik's income will be zero." *Id.*

The final PSR reflected these changes, now stating that Paik "was previously making $9,000 per month. However, he advised he recently received an eviction notice and is in the process of closing the business." *Dkt. 52* (Presentence Report). The final PSR stated that "[t]herefore, at the time of sentencing, Mr. Paik's income from his business will be zero." The PSR separately listed Mr. Paik's current Business Income as $0. The PSR stated that Mr. Paik had three checking accounts with a total balance of $35,100. *Id.* Other than two vehicles, it listed no other assets. *Id.* The PSR stated that the information "was obtained from Mr. Paik and from reviews of public records." *Id.* The PSR certified that the draft PSR had been disclosed to the defendant's counsel *for discussion with the defendant.*" *Id.* Nowhere in the draft PSR, the response letter to U.S. Probation, or in the final PSR did Paik ever disclose the existence of a second restaurant, or any additional revenue from any source other than the original Nick's Lighthouse restaurant, even though at the time, Paik owned and was operating a second restaurant, Nick's Lighthouse $3, was earning tens of thousands of dollars a month in revenue, and had listed it for sale for $300,000.

Mr. Paik's agreed upon U.S. Sentencing Guidelines range was 18 to 24 months. In recommending a sentence of only six months in custody, U.S. Probation wrote that Paik "is 65 years old and recently lost his business and his source of income." *Id.* This was one of the primary justifications for U.S. Probation's recommendation for a variance. *Id.*

On November 13, 2025, defendant Paik filed a Sentencing Memorandum and Motion for Downward variance, asking the Court to impose a sentence of one year of home confinement. *Dkt. 55.* The third paragraph of the Motion states:

> The past two years have brought consequences far beyond what he anticipated. His business has collapsed, the Port has terminated the lease for his restaurant Nick's Lighthouse, and he has been ordered to vacate the premises no later than November

21. His has lost his only source of income, and at 65 years old now faces the reality of starting over with limited prospects and mounting financial strain." *Id.*

At the sentencing hearing, defense counsel stated that Paik and his wife "do not have any assets. He is handing over the keys to the restaurant tomorrow. They don't have savings, they don't have a home. There's no fallback, there's no safety net . . . they don't even know how to pay rent for the next six months. " *See Ward Decl.,* **Exhibit C** (Sentencing Hearing Recording).

Defendant Paik himself made a personal statement at sentencing, saying: "Now that the restaurant has been closed, so I just want to be able to get a job perhaps with another restaurant to pay rent and to pay debts." *Id.* Throughout the sentencing process, the repeated representations by Mr. Paik were that he had <u>one</u> restaurant, Nick's Lighthouse. In fact, since approximately October 2024, Paik has owned and run a second restaurant, Nick's Lighthouse #2.

According to public records and documents obtained by the government following the sentencing hearing, in August 2024, Paik filed incorporation papers with the California Secretary of State for a company called "Wharf77" at an address on Leavenworth Street in San Francisco connected to the restaurant location at 445 Jefferson Street. *Ward Decl.,* **Exhibit D**. At that time, Paik also signed a commercial lease for a full-time restaurant "serving primarily seafood with a menu similar to Nick's Lighthouse Restaurant." *Id.,* **Exhibit E.** The lease is for space at 445 Jefferson Street, the current location of Nick's Lighthouse #2.

Bank records for Wharf77 Inc., the corporate entity for the Nick's Lighthouse #2 restaurant, show that from October 2024 through October 2025, total deposits ranged from $12,712 to $37,162 per month. For the month of November 2025 alone, when Mr. Paik was representing that his restaurant was closed and his income zero, bank records show that Wharf77 had $75,442.10 in deposits (which consisted of $19,192 in revenue and $56,234 in deposits and transfers from a bank account in the name of Wharf777, the corporate name for the original Nick's Lighthouse) and $56,304 in withdrawals. *Ward Decl.* **Exhibit F.**

According to documents obtained by the government, on November 10, 2025, defendant Paik signed a Business Listing Agreement to sell Nick's Lighthouse #2. *Ward Decl.*, **Exhibit G.** He set the listing price at $300,000.

1    On November 25, the FBI conducted surveillance at Nick's Lighthouse #2.  The agent saw Hye Paik working inside the restaurant.  *Ward Decl.,* **Exhibit H.**  According to the agent's report, he showed a picture of defendant James Paik to an employee standing outside the restaurant, and that employee confirmed that Paik was the owner of Nick's Lighthouse #2.  The agent took the following picture:



### III.   LEGAL STANDARD

#### A.   Pretrial Release and Detention

A defendant who has violated his terms of release after being released pursuant to 18 U.S.C. § 3142 is subject to revocation pursuant to 18 U.S.C. § 3148.  *See United States v. Reynolds*, 956 F.2d 192, 193 (9th Cir. 1992).   Prior to a finding of guilt or sentencing, the burden is on the government to demonstrate that the defendant is either a risk of flight or a danger to the community.  After sentencing, however, the burden shifts, and the statute "establishes a presumption in favor of detention."  *United States v. Abuhamra*, 389 F.3d. 309, 319 (2d Cir. 2004) ("Once guilt of a crime has been established in a court of law, there is no reason to favor release pending imposition of sentence or appeal.").   At that point, a defendant shall be detained unless the court finds, by clear and convincing evidence, that the person is not likely to flee "or pose a danger to the safety of any other

person or the community." *18 U.S.C. § 3143(a)*. The burden on the defendant to overcome this presumption of detention is "plainly substantial." *Abuhamra* 389 F.3d at 319, *citing* Fed. R. Crim. P 46(c) ("to secure release on bail after a guilty verdict, a defendant must rebut this presumption with clear and convincing evidence that he is not a risk of flight or a danger to any person or the community.").

An attorney for the government may initiate the process of revoking bond by filing a motion with the district court. *18 U.S.C. 3148(b)*. Under section 1348(b), a judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer finds, (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or, (B) clear and convincing evidence that the person has violated any other condition of release, and either:

(A) based on the factors set forth in Section 3142(g), there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or that,

(B) the person is unlikely to abide by any condition or combination of conditions of release.
*18 U.S.C. § 3148(b)(1)(A & B)* and *(b)(2)(A) & (B)*.

Probable cause to believe that the defendant has committed another crime exists where "the available facts suggest a fair probability that the suspect has committed a crime." *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006); *see also United States v. Krupa*, 658 F.3d 1174, 1177 (9th Cir. 2011) ("Probable cause means only a 'fair probability,' not certainty, and requires consideration of the totality of the circumstances."). If there is probable cause to believe the individual "committed a Federal, State, or local felony" while on pretrial release, then "a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." *18 U.S.C. § 3148(b)*.

Courts have held that " "[t]he determination of whether there is no condition or combination of conditions of release that will assure that Defendant will not flee or pose a danger to the safety of any other person or the community or that he is unlikely to abide by any condition or combination of conditions of release under section 1348(b) may be established by a preponderance of the evidence." *United States v. Patterson,* 2020 WL 6200164 at *9 (E.D. Cal. 2020), *citing United States v. Gotti*,

794 F.2d 773, 778 (2d Cir. 1986).

Under 18 U.S.C. § 1503, it is a crime when anyone "corruptly . . . endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States" or "corruptly . . . influences, obstructs, impedes or endeavors to influence, obstruct, or impede, the due administration of justice." *18 U.S.C. § 1503(a)*. If the corrupt act at issue involved the making of a false statement, the materiality of the false statement is a required element of the crime. *See United States v. Thomas*, 612 F.3d 1107, 1128-29 (9th Cir. 2010). As used in Section 1503, "'corruptly' . . . means that the act must be done with the purpose of obstructing justice." *United States v. Rasheed*, 663 F.2d 843, 852 (9th Cir. 1981).

A violation of § 1503 can be completed by words alone, and success of the effort to influence, impede or influence a judicial proceeding is not required. *Rasheed*, 663 F.2d at 853 ("Section 1503 proscribes endeavors to obstruct and actual obstruction is not an element of proof.")' s*ee also United States v. Fasolino*, 586 F.2d 939, 941-42 (2d Cir. 1978) (confirming conviction of defendant who unsuccessfully solicited another to influence a judge to impose a lenient sentence).

## IV.   ARGUMENT

Mr. Paik lied to the Court and made material misstatements and omissions to U.S. Probation, the Court, and the government, all in a corrupt effort to influence the administration of justice. His failure to correct false representations in the PSR and at sentencing led to his attorneys making material misrepresentations to the Court and to U.S. Probation on his behalf, and to Probation and the government making sentencing recommendations based on false representations. And it appeared to impact the Court in its sentencing decision.

Mr. Paik met with U.S. Probation and he filled out a Net Worth Statement and was interviewed by U.S. Probation. He knew that he was required to tell the truth, yet he repeatedly falsely claimed that he had one restaurant, that it was going to or had closed, and that he had no other source of income. At no point did Mr. Paik disclose to U.S. Probation that he had *two* restaurants. To the contrary, throughout the process, Mr. Paik knowingly and intentionally falsely represented to U.S. Probation that he had "a restaurant," that it was closing, and that going forward Mr. Paik would have no business income. Mr. Paik also represented to U.S. Probation that he had no assets beyond

his checking accounts and two vehicles.

Mr. Paik continued his deception through the sentencing process. He allowed his defense counsel to make representations to the Court that he had one restaurant, that it had closed, that he had no income, and no business prospects, and he and his wife, both in their 60s, were facing a highly uncertain future. All of this was false, and were made as Paik stood before the Court. And Mr. Paik himself lied. In his statement to the Court at sentencing, Mr. Paik said the following:

> Now that the restaurant has been closed, I just want to be able to get a job, perhaps with another restaurant, to be able to pay rent and to pay debts. In that way I would like to recover some of that trust from my family and the community.

*Ward Decl.,* **Exhibit C.**

These misstatements and omissions were material, and were intended to impede the due administration of justice. They were a central plank in what was Mr. Paik's most significant argument for leniency from the Court – that the collateral financial consequences to him and his family were so severe, and that Mr. Paik and his wife were facing such dire economic straits, that the additional punishment of incarceration would be unwarranted and unneeded. The misrepresentations were repeated again and again - in the draft PSR, in the Final PSR, in counsel's sentencing memorandum and at sentencing. Throughout the process, Mr. Paik had an obligation to provide accurate and truthful information, to correct any misstatements or misrepresentations, and above all, to be truthful when standing before the Court. He did none of that. Through his concealment, deceit and lies, he made repeated material misrepresentations to the Court, actions "intended to influence, obstruct or impede the due and proper administration of the law."

Mr. Paik's statements and actions violate both the terms of his Pretrial Release, as well as the terms of the Plea Agreement to which Mr. Paik agreed. The Bond Form Mr. Paik signed and agreed to states that the defendant "must not harass, threaten, intimidate, injure, tamper with or retaliate against any witness, victim, informant, juror, or officer of the court, *or obstruct any criminal investigation. See 18 U.S.C. § § 1503, 1510, 1512."* (Italics added). Mr. Paik also violated the terms of his Plea Agreement, in which he agreed "not to intentionally provide false information to the Court, the Probation Office, Pretrial Services, or the government." Dkt. 47 (¶ 10).

1   While the government is not required to prove that Mr. Paik's efforts were successful, his
2   deceptions were factored into both U.S. Probation and the government's sentencing
3   recommendations.  In the final PSR, U.S. Probation recommended a downward variance to a
4   sentence of six months, writing that Paik "is 65 years old and has recently lost his business and his
5   source of income.  Mr. Paik has also accepted responsibility for his crimes and has made efforts to
6   pay restitution to the IRS in full prior to sentencing.  These mitigating factors warrant a downward
7   variance from the applicable guideline range." *Dkt. 52.*

8   In its sentencing recommendation, the government, while arguing that even though Mr. Paik
9   made a conscious decision to turn to corruption and to engage in tax evasion, "the Court should
10  certainly take into account at sentencing the hardships Mr. Paik has faced, as well as the collateral
11  consequences of his actions." *Dkt. 56.*

12  Mr. Paik's purported financial condition also appeared to weigh on the Court in deciding
13  what sentence to impose.  As the Court stated at sentencing:

> He has taken responsibility, shown remorse, and most importantly from the
> Court's perspective, he has made early payment on his restitution.  He has already
> paid off all of the restitution he owes to the United States government for his tax
> evasion, despite his current financial condition.  That counts for a lot.

17  *Ward Decl.,* **Exhibit C.**

18  Mr. Paik's actions here continue a pattern and history of deceit, false statements, and
19  disregard for the law.  He was convicted of tax evasion for concealing over $200,000 in income and
20  then intentionally filing false statements with the IRS.  He was convicted of Bribery for paying off a
21  Port of San Francsico official to evade and impede the proper workings of the Port.  His deceptions
22  and lies in the PSR and at sentencing are not new or unique behavior; they a part of a clear pattern
23  and practice.  Paik stood before this Court and said that he had had accepted responsibility for his
24  crimes, he was remorseful, and that he had "learned a lesson I will never forget."  Mr. Paik's actions
25  here demonstrate that none of that was true.

26  **V.   CONCLUSION**

27  The government has established probable cause that Mr. Paik has violated the terms of his
28  pretrial release. He made false statements to U.S. Probation and the Court, and he did so intending to

corruptly influence the administration of justice. He violated the terms of his pretrial release bond, and the terms of the Plea Agreement. As such, he cannot meet his burden in establishing that he is not a danger to the community. Therefore, the Court should revoke defendant's bond and order him remanded into custody immediately.

DATED: December 16, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

 */s/ David J. Ward*
DAVID J. WARD
Assistant United States Attorney